UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re:                                          Case No.: 13-CV -04637-ADS

       FIORANO TILE IMPORTS, INC.,

               Debtor.                       Bankruptcy Case No.: 10-77406-ast

-----------------------------------------------------------------X


## APPELLEE FIORANO TILE IMPORTS, INC'S
## BRIEF IN RESPONSE


PRYOR & MANDELUP, L.L.P.
Attorneys for Reorganized Debtor- Appellee
Fiorano Tile Imports, Inc.
John H. Hall, Jr.
Scott L. Swanson
675 Old Country Road
Westbury, New York 11590
(516) 997-0999

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ... .............................................. i

TABLE OF AUTHORITIES ... ........................................... iii

PRELIMINARY STATEMENT ... .................... ... ................. 1

QUESTIONS PRESENTED ... ............................ .... ......... 1

STANDARD OF REVIEW ... ...................... ... ............ ... ....... 2

SEVENTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF
FIORANO TILE IMPORTS INC. ... .................... ... ............... 2

FACTS OF THE CASE ... ........................ ... .................... ... ........ 3

A.    THE APPELLANT LACKS STANDING TO BRING THIS APPEAL
      AND IT SHOULD BE DISMISSED ... ....................... ... ........... 12

B.    THE BANKRUPTCY COURT DID NOT ERR IN FINDING THE
      PLAN COMPLIED WITH AFFILIATION DISCLOSURE
      REQUIREMENTS OF § 1129(A)(5) ... .................... ... ........... 13

C.    THE BANKRUPTCY COURT'S GOOD-FAITH FINDING
      UNDER 1129(a)(3) WAS NOT CLEARLY ERRONEOUS ... ............ 15

D.    THE BANKRUPTCY COURT DID NOT CLEARLY ERR IN
      FINDING THE PLAN FEASIBLE UNDER §1129(a)(11) ... ............ 16

      I.     The Bankruptcy Court properly found the Plan
             feasible under 11 U.S.C. § 1129(a)(11) ... ..................... 17

      II.    The "clear errors" alleged by Appellant in the
             Bankruptcy Court's feasibility determination appear
             commonly accepted practices in the Second Circuit ... ............ 19

E.    THE BANKRUPTCY COURT DID NOT ABUSE ITS
      DISCRETION IN FAILING TO DISMISS THE CASE
      FOLLOWING ITS FEBRUARY 5, 2013 ORDER ... .................... 20

F.    THE APPEAL IS EQUITABLY MOOT AS THE PLAN
HAS BEEN SUBSTANTIALLY CONSUMMATED ................... 22

CONCLUSION ................. .................. ...................... 24

EXHIBIT A ................. .................. ..................

EXHIBIT B ................. .................. ..................

## TABLE OF AUTHORITIES

Page

11 U.S.C. § 1101(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11 U.S.C.§ 1107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 1108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 1129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 21

11 U.S.C. § 1129(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 1129(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 16

11 U.S.C. § 1129(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 14, 15

11 U.S.C. § 1129(a)(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16, 17

Anderson v. Bessemer City, 470 U.S. 564, 573-75, 105 S. Ct. 1504,
84 L. Ed. 2d 518 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Argo Fund Ltd. v. Bd. of Dirs. of Telecom Arg., S.A. (In re Bd. of Dirs.
of Telecom Arg., S.A.), 528 F.3d 162, 174 (2d Cir. N.Y. 2008) . . . . . . . . . . . . . . 15

Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation Corp.), 383
B.R. 856, 863 (E.D.N.Y. 2008)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Deep v. Copyright Creditors, 122 Fed. Appx. 530, 531-532 (2d Cir. N.Y. 2004) . . . . . . . . 20

Deutsche Bank AG v. Metromedia Fiber Network (In re Metromedia Fiber
Network, Inc.), 416 F.3d 136, 143 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . 22

Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.),
634 F.3d 79, 107 (2d Cir. N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 19

Figter Ltd. v. Teachers Ins. & Annuity Ass'n (In re Figter Ltd.), 118 F.3d
635, 638 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Freeman v. Journal Register Co., 452 B.R. 367, 371 (S.D.N.Y. 2010) . . . . . . . . . . . 12, 13

Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.) (Chateaugay II),
10 F.3d 944 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Ho v. Dowell (In re Ho)</u>, 274 B.R. 867, 870 (9th Cir. BAP 2002) . . . . . . . . . . . . . .   15

<u>In re 20 Bayard Views, LLC</u>, 445 B.R. 83, 100-101 (Bankr.
E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16, 18

<u>In re Buckhead America Corp.</u>, 180 Bankr. 83, 1995 U.S. Dist. LEXIS
5074 (D. Del. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

<u>In re Cellular Information Sys.</u>, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) . . . . . . .   17

<u>In re Drexel Burnham Lambert Group</u>, 138 B.R. 723, 762 (Bankr.
S.D.N.Y. 1992) .. . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . .   20

<u>In re Fur Creations by Varriale</u>, 188 B.R. 754, 759 (Bankr. S.D.N.Y. 1995). . . . . . . .   19

<u>In re Future Energy Corp.</u>, (1988, BC SD Ohio) 83 BR 470, 17 BCD 159 . . . . . . . . .   14

<u>In re Granite Broad. Corp.</u>, 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007) . . . . . . . . . . .   15, 16

<u>In re Leslie Fay Cos.</u>, 207 B.R. 764, 789 (Bankr. S.D.N.Y. 1997) . . . . . . . . . . . . . .   18

<u>In re PWS Holding Corp.</u>, 228 F.3d 224, 44 C.B.C.2d 1647 (3d Cir. 2000). . . . . . . .   14, 16

<u>In re Vebeliunas</u>, 332 F.3d 85, 90 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . .   2

<u>In re Webb</u>, 932 F.2d 155, 158 (2d Cir. N.Y. 1991) . . . . . . . . . . . . . . . . . . . .. . . . . .   16, 20

<u>Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)</u>, 843 F.2d
636, 642 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 15

<u>Licensing by Paolo, Inc. v. Sinatra (In re Gucci)</u> 126 F.3d 380,
388 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

<u>Lutin v. Advanced Mining Sys. (In re Advanced Mining Sys.)</u>, 189 B.R.
36, 40 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

<u>Murphy v. FedEx Nat'l LTL, Inc.</u>, 618 F.3d 893, 905 (8th Cir. 2010) . . . . . . . . . . .   21

<u>Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co.
v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re
Chateaugay Corp.) (Chateaugay I)</u>, 988 F.2d 322, 325 (2d Cir. 1993) . . . . . . . . . .   22

<u>Truskoski v. ESPN, Inc.</u>, 60 F.3d 74, 77 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . .   20

United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

Windels Marx Lane & Mittendorf, LLP v. Source Enters. (In re Source Enters.), 392 B.R. 541, 547-548 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . .   22, 23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
CHERRY VALLEY ASSOCIATES, LLC

                              Case No.: 2-13-cv-04637-ADS

                     Appellant,

    - against -

FIORANO TILE IMPORTS INC.


                     Appellee.
--------------------------------------------------------------X

## PRELIMINARY STATEMENT

       The question before the Court is whether it should overturn the decision of the Bankruptcy Court to confirm the Seventh Amended Chapter 11 Plan of Fiorano Tile Imports, Inc. ("Plan"), which provides unsecured creditors with more than they would receive in a liquidation, when the Plan was accepted by all the classes of creditors in the bankruptcy case; the Office of the United States Trustee did not object to the confirmation of the Plan, the Bankruptcy Court, after a number of hearings both evidentiary and otherwise, found that the Plan complied with the requirements of § 1129 of Title 11 of the United States Code ("Bankruptcy Code"); and the Plan, absent a filing of fee applications by the professionals, is substantially consummated.

       Appellant's argument is, primarily, that the Bankruptcy Judge waited too long, gave the Debtor too many chances to recover from the Great Recession and from Hurricane Sandy and, thus, the Plan should not have been confirmed.

## QUESTIONS PRESENTED

       1.      Whether the Seventh Amended Chapter 11 Plan of Fiorano Tile Imports Inc. complies with § 1129 of Title 11 of the United States Code, specifically, (i) §1129(a)(5), (ii) §1129(a)(3), and §1129(a)(11) of the Bankruptcy Code.

2.      Whether the Bankruptcy Court erred, and abused its discretion when it refused to dismiss the case or convert the case earlier in the proceedings.

## STANDARD OF REVIEW

3.      An appellate court generally reviews findings of fact and conclusions of law independently.   In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003).   Appellate courts review bankruptcy court findings of fact only for clear error and exercise *de novo* review regarding conclusions of law. Vebeliunas, 332 F.3d at 90.  Questions of mixed fact and law are reviewed *de novo*. Vebeliunas, 332 F.3d at 90.  Accordingly, the Bankruptcy Court's Order should be reviewed *de novo*.

## SEVENTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF FIORANO TILE IMPORTS INC.

a.      Administrative Expense Claims -

Professionals - Claims $230,000.00.  These claims were voluntarily reduced by $35,000.00, retainers credited after approval by the Court, with the balance to be paid over three (3) years.

b.      Priority Tax Claim of the IRS - $121,235.27

To be paid in full over five (5) years from date of Confirmation, with interest at the statutory rate.

c.      Priority Tax Claim of New York State - $106,936.81

To be paid in full over eight (8) years, with interest at the rate of 7.5%.

d.      NYS Department of Labor Priority Tax Claim - $13,728.81

To be paid in full over a period of thirty-eight (38) months.

e.   <u>The Secured Tax Claim of the IRS in the Approximate Amount of</u> - $111,095.69

>   To be paid in full over a period of six (6) years, with interest at the statutory rate.

f.   The Secured Tax Claim of New York State
<u>in the Approximate Amount of</u> - $286,784.063

>   To be paid in full over a period of eight (8) years, with interest at the rate of 7.5%.

g.   <u>General Unsecured Claims</u>  - $1,813,378.00

>   To be paid one and one half (1½ %)on the Effective Date.

h.   <u>Interests</u> -

>   The Debtor's principals retained their interests by virtue of a cash infusion of $20,000.00 and various tax refunds from the United States Government and New York State.

All classes of creditors voted for the Debtor's Plan of Reorganization.  Only three creditors voted against the Plan: Cherry Valley Associates, LLC, Natalie Valentine and American Express.

## **FACTS OF THE CASE**

1.   Fiorano Tile Imports Inc. ("Fiorano", "Debtor" or "Reorganized Debtor") is a specialty supplier of tile utilized in the construction business.

2.   On September 1, 2010, Fiorano and its affiliate Fiorano Tile Showcase of Bellmore LLC ("Showcase"), each filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

3.   Both entities remained in possession and control of their operations in accordance with §§ 1107 and 1108 of the Bankruptcy Code.

4.   On December 15, 2010, the Bankruptcy Court entered an Order authorizing

the Debtor to reject its lease with Appellant ( D- 49).

5.     Appellant is the landlord of a warehouse that the Debtor could not effectively utilize, because of the Debtor's financial condition, resulting from the Great Recession.  By virtue of the rejection of the lease, Appellant is an unsecured creditor.

6.     The effect of the Great Recession upon the Debtor and other, similar entities, was tremendous.

7.     On February 28, 2011, Appellant filed a motion seeking an administrative expense claim resulting from unpaid rent and costs while the Debtor was in possession of the warehouse, in the amount of $14,578.67.  (D - 58)

8.     On May 10, 2011, the Court entered a stipulation and order directing payment of the Appellant's claim in certain installments.  (D - 71)  The payments were made.

9.     On January 31, 2012,  Fiorano and Showcase filed the Joint Disclosure Statement of Fiorano Tile Imports Inc. and Fiorano Tile Showcase of Bellmore, LLC ("Joint Disclosure Statement") (D - 113)

10.    On Page 5 of the Joint Disclosure Statement Fiorano disclosed that the property from which it conducted business was in foreclosure.

11.    Under that Plan, Fiorano planned to pay unsecured creditors one (1%) percent over five (5) years.

12.    On March 12, 2012, Appellant filed an objection to the Joint Disclosure Statement.  (D - 123)

13.    Appellant, among other things, objected on the basis that the Debtor's operating reports showed  Fiorano paid the owner of the real property from which it conducted

I:\Client_files\Fiorano Tile\Appeal\appeal brief 10-15-13.wpd

business $17,350.00, the Disclosure Statement did not disclose those payments, and because a foreclosure of the property was pending, the Plan was not feasible.  (D - 123)

14.     On April 27, 2012, Fiorano and Showcase filed their Amended Joint Disclosure Statement ("Amended Statement").  (D - 131)

15.     In the Amended Statement, Fiorano provided an explanation for the payments, totaling $34,606.00, to Fiorano Realty ("Realty"), which was owned by the mother of the Debtor's principals.  Realty, in order to move this case along, agreed to return those payments to the Debtor prior to confirmation and agreed to waive any use and occupancy.

16.     The Amended Statement also provided a strategy for dealing with the fact that the building was in a foreclosure proceeding, which was a component of the bankruptcy proceeding of Lehman Brothers.  The Amended Statement also indicated that no resolution of the foreclosure process would occur in the immediate future (D - 131)

17.     Wrestling with the obvious weakness in its Plan, providing for payment of unsecured creditors over five (5) years with no assurance of maintaining its operations in its existing location, and the effects of the Great Recession, the Debtor provided estimates of the cost of the move and provided for the formation of an escrow account ("Move Escrow Account").  (D - 131 Pg. 8)

18.     On May 31, 2012, the Debtors filed a Second Amended Joint Disclosure Statement with corresponding Plans.

19.     In that document, the Debtor introduced the concept of the payment to unsecured creditors of any funds in the Move Escrow Account not utilized in the five (5) year payment period.  (D - 140 page 8)

I:\Client_files\Fiorano Tile\Appeal\appeal brief 10-15-13.wpd

20.     Appellant filed an objection.

21.     Slightly less than a month later, the Debtor filed a Third Amended Joint Disclosure Statement.(D - 143)

22.     In the Third Amended Joint Disclosure Statement the Debtor further expanded the explanation of its strategy if it was forced to move.

23.     Appellant filed an objection to the Third Amended Joint Disclosure Statement, arguing the Debtor did not provide adequate information concerning (a) its financial status; (b) the payments to Realty; and (c) that the equity contribution of the Debtor's principals was not sufficient. (D - 144)

24.     The Debtor went back to the drawing board in an attempt to answer Appellant's concerns.

25.     On July 10, 2012, a Fourth Amended Joint Disclosure Statement was filed.

26.     In the Fourth Amended Joint Disclosure Statement the Debtor, in response to the Appellant's continuing demands for more information, added detailed assumptions that were utilized in the projections.  It also modified the projected amounts of certain claims.  (D - 143)

27.     On July 23, 2012, the Court conducted a hearing on the Fourth Amended Joint Disclosure Statement, and scheduled an additional hearing for August 22, 2012.

28.     A few days later, after modifying the documents to concur with the Court's comments and raising the percentage paid to unsecured creditors to 1.5%, the Debtor filed a Fifth Amended Joint Disclosure Statement.

29.     On July 27, 2012, the Court entered an Order approving the Fifth Amended Joint Disclosure Statement, scheduling a hearing on confirmation for August 22, 2012 and directing

I:\Client_files\Fiorano Tile\Appeal\appeal brief 10-15-13.wpd

the solicitation of votes. (D - 167)

30.     The August 22, 2012 Confirmation hearing was adjourned to October 9, 2012 at the request of the Appellant.

31.     On October 1, 2012, the Debtor filed a certificate of balloting, showing approval of confirmation of the Debtor's Plan of Reorganization and that of it's affiliate. The document indicated that all classes of creditors had accepted the Plan.  (D - 180)

32.     On October 5, 2012 the Debtor filed an affidavit of the Debtor's principal, in support of confirmation.  The affidavit specifically addresses each requirement for confirmation under  § 1129 of the Bankruptcy Code. (D - 181)

33.     Even though the Debtor's Plan was overwhelmingly approved by the other creditors, on October 6, 2012 Appellant filed it's objection to confirmation.

34.     The main thrust of Appellant's objection was the amounts paid to Realty that had not been disclosed, and the use of those funds.  It was alleged that total payments equaled $77,250.00.

35.     Secondly, the Appellant attacked the Debtor's financial statements, claiming that the Plan was not feasible, and the Debtor's principal's affiliation with Realty. (D-182)

36.     The Court on October 9, 2012, conducted a hearing on confirmation and the Appellant's objection.  The Court adjourned the confirmation hearing to November 8, 2012.

37.     The Debtor filed a Modified Fifth Amended Chapter 11 Plan ("Modified Plan").  The Modified Plan contained a description of the Debtor's management structure.  The treatment of creditor classes remained the same. (D- 186)

38.     The Debtor also filed a response to the objection of the Appellant.  The

response consisted of an affidavit of the Debtor's principal to allegations made by Appellant. (D-187)

39.     Appellant on October 25, 2012 filed a motion seeking to dismiss or convert both the Debtor's case and that of its affiliate, to cases under Chapter 7. ( D - 192)

40.     Hurricane Sandy occurred on October 29, 2012, crippling the economy in this area, but dramatically changing the economics of the construction industry.

41.     It created a tremendous demand for construction, and anticipation that the 'rising flood would float all boats'.

42.     On November 2, 2012, the Debtor filed a response to the motion to convert or dismiss. The Debtor argued that the Plans were in the best interest of creditors, the creditors affirmed that argument by voting overwhelmingly in favor of it, and that Appellant did not have standing to interfere in the Showcase matter. (D - 193)

43.     Appellant responded, but never made a showing that conversion or dismissal of either case was in the best interest of creditors. (D - 194)

44.     The Court conducted an evidentiary hearing on all matters on December 17, 2013.

45.     At the direction of the Court, on January 8, 2013, the Debtor filed a proposed order listing certain requirements the Debtor would have to meet by May 5, 2013, and adjourning the dismissal motion to May 20, 2013. (D - 203)

46.     Appellant filed a reply and counter-order. (D - 206)

47.     On February 4, 2013, the Court confirmed the Plan of Reorganization of the Debtor's affiliate, Showcase. *See* Docket of Bankruptcy Case No.: 10-77407-ast.

48.     After review of the document, the Court entered its own order on February

5, 2013.  The Order denied confirmation of the Modified Fifth Amended Plan of Reorganization,

placed two requirements on the debtor, and provided as follows:

> ORDERED, that if Fiorano Tile fails to comply with the
> deadlines in this order, or otherwise fails to demonstrate at the
> Further Confirmation Hearing that its proposed plan of
> reorganization satisfies the criterion for confirmation,
> particularly feasibility, this Court will enter an order dismissing
> or converting Fiorano Tile's case in accordance with 11 U.S.C.
> § 1112(b)(4).

(D - 210)

49.     The Order specifically indicates that at that time the Court was mostly

concerned with the feasibility issue.

50.     The Debtor complied with the deadline requirements. (D - 218, 219)

51.     The Court, on May 1, 2013, filed another Order concerning the Confirmation

Hearing.  It provided specific dates and requirements (D - 215)

52.     The Debtor, on May 10, 2013, filed its Sixth Amended Plan of

Reorganization.

53.     The Sixth Amended Plan included language that the IRS had credited

$31,000.00 of the Debtors' principals' tax refunds to the equity infusion.

54.     In support of confirmation, the Debtor subsequently filed the following

documents:

a.      Statement of documents in support of the debtor's Sixth Amended Plan of
        Reorganization (D - 221)

b.      Joint Pre-Hearing Memorandum and Pre-Hearing Submission (D - 224)

c.      The Debtor's Operating Report for the period April 1, 2013 - April 30, 2013 (D -

220)

d.   Amended Budgets (D - 225)

55.   Thus, the Court had before it a full record.

56.   On May 29, 2013, the Court conducted an evidentiary hearing on all matters pending.

57.   The issue of feasibility was a critical topic at that hearing. The Debtor's principals, and their mother, testified.

58.   At the hearing, the Debtor informed the Court that to solve the feasability dilemma the Debtor would modify the Plan to pay unsecured creditors the full amount due at Confirmation.

59.   The Court denied confirmation of the Sixth Amended Plan and scheduled a status conference for July 15, 2013. (D - 227)

60.   Subsequently, the Debtor filed the Seventh Amended Chapter 11 Plan of Reorganization providing for the changed treatment, and filed the written consent of both the Internal Revenue Service ("IRS") and the State of New York ("NYS") to the change and the Plan. (D - 228)

61.   The Debtor's largest creditors reaffirmed their belief in the Debtor's good faith and ability to comply with its obligations.

62.   The Debtors also filed a proposed order of Confirmation. (D - 229)

63.   Debtor's counsel filed an affidavit indicating it was holding $70,100.00 for payments required by the Seventh Amended Plan, and two checks totaling $16,352.00, to be   paid to NYS. (D - 231)

64.   Continuing in its efforts to deny confirmation, Appellant filed an objection.

(D - 232). Appellant argued the debtor still had not proven feasibility.

65.     The Court, after months of review, hearings, and listening to testimony, entered an Order confirming the Seventh Amended Plan. (D - 237)

66.     Appellant then filed its appeal, and sought a stay which, after a hearing, was denied. (D - 242, 247)

67.     On July 11, 2013, the Debtor filed a Statement of Distribution.  It indicated:

a.     The Debtor issued checks totaling the amount of $27,333.00 to unsecured creditors. The only check that did not clear was the one issued to Appellant.  Upon information and belief, in order to create standing, the Appellant did not cash the check

b.     The Debtor paid NYS $18,950.00.

c.     The Debtor began making monthly payments of $4,382.00 to the IRS.

(D - 248)

68.     The undersigned has been informed by the Reorganized Debtor that it is continuing to make the payments required by the Plan, and that the Debtor's principals have made the required capital contributions.  *See* proof of payment annexed hereto as **Exhibit "A"**.

69.     On October 1, 2013 the Debtor filed an application with the Bankruptcy Court seeking a modification of the Debtor's time to request a Final Decree, because of this pending appeal. (D - 261) (Annexed hereto as **Exhibit "B"**)

70.     In sum, the Court did not come to a conclusion to confirm the Debtor's Plan easily.  The process was long, the Judge reviewed objections and required the Debtor not only to respond to the objections, but to cure issues he felt were troubling.

71.     The Debtor and it's principals performed every task asked of them by the Court and the Office of the United States Trustee.

I:\Client_files\Fiorano Tile\Appeal\appeal brief 10-15-13.wpd

A.    **The Appellant Lacks Standing to
Bring This Appeal and It Should Be Dismissed**

72.    The Appellant lacks standing to bring this appeal because it is not an aggrieved person.

73.    Appellant is not an aggrieved person because it has not been alleged that it would have received more that it was paid either in a conversion or a dismissal, and it did not seek to put forth a plan which would pay more to unsecured creditors.

74.    To have standing to appeal a bankruptcy court order, an appellant must be an "aggrieved person." Licensing by Paolo, Inc. v. Sinatra (in re Gucci) 126 F.3d 380, 388 (2d Cir. 1997). "[A] party to the bankruptcy proceedings is permitted to appeal a particular order only if the order directly affects his pecuniary interests." Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 642 (2d Cir. 1988). Freeman v. Journal Register Co., 452 B.R. 367, 371 (S.D.N.Y. 2010)

75.    This is related to the concept of prudent standing. *See* Freeman v. Journal Register Co., 452 B.R. 367, 371 (S.D.N.Y. 2010) ("In addition to satisfying the aggrieved person standard, an appellant must also have prudential standing.") Prudential standing is particularly important in a bankruptcy context where one party may seek to challenge the plan based on the rights of third parties who favor the plan. In re Johns-Manville, 843 F.2d at 644. ("In this context, the courts have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights." Id.).

76.    In Freeman v. Journal, the court found that an equity holder did not satisfy the aggrieved party standard since the plan reduced recoveries of both secured and unsecured parties -

thus making recovery as an equity holder impossible. Freeman v. Journal Register Co., 452 B.R. 367, 371 (S.D.N.Y. 2010) ("These compromised recoveries clearly indicate that the Debtors, no matter the terms of a plan, were not sufficiently solvent to provide equity holders with a recovery" and "thus, here where various classes of creditors received less than their full recoveries, the appellant, as an equity holder, has no basis for recovery and, accordingly, no pecuniary interest at stake.")

77.    In this case, the Plan provides holders of numerous tax claims with similarly "compromised recoveries". These classes, all of which approve of the plan, have taken considerable "haircuts" on their claims. These claims have priority over the general unsecured creditors of which Appellant is a part. Outside of the plan, general unsecured creditors would receive less than they are immediately paid under the plan. In fact, they would not receive anything. (D - 163) Thus, Appellant appears to fail the aggrieved party standard.

78.    Nor does Appellant appear to have prudential standing to object to the confirmation of a plan under which its own class of creditors were paid in accordance with the Plan and Appellant refused to accept its own payment.

79.    Appellant's interests were satisfied upon confirmation of the Plan. It would have received nothing more in liquidation. Indeed, it would have received less.

**B.    The Bankruptcy Court Did Not Err in Finding the Plan Complied With Affiliation Disclosure Requirements of 1129(a)(5)**

80.    The disclosure requirements under § 1129(a) demand that "[t]he proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the

debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan" and that "Appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and (B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider".

      81.    Two points of law on the subject are important here. First, courts find that undisclosed affiliations revealed prior to or at the confirmation do not provide a basis for denial of confirmation. In re Future Energy Corp., (1988, BC SD Ohio) 83 BR 470, 17 BCD 159 (failure of Chapter 11 plan proponents to disclose information regarding identity, affiliations and compensation of individuals who will serve as officers of debtor in possession on postconfirmation basis does not alone provide basis to deny confirmation of plan under 11 USCS § 1129(a)(5) where identity, affiliations and compensation of debtor's postconfirmation officers were disclosed at confirmation hearing). On page 12 in paragraph 4 of the Plan, Debtor disclosed the name, title and compensation of all officers of the Reorganizing Debtor. Second, to demonstrate that plan proponents fail to comply with disclosure requirements, "an objecting party must demonstrate that other creditors would have acted differently if the disclosures had been made". In re PWS Holding Corp., 228 F.3d 224, 44 C.B.C.2d 1647 (3d Cir. 2000).

      82.    The affiliations noted by Appellant do not appear to be of the sort required for disclosure under 1129(a)(5). It is clear, however, that the undisclosed information noted by Appellant was disclosed prior to the confirmation hearing, even though not required. Finally, Appellant has not put forth one shred of evidence to prove that the creditor body would have voted differently as a result of the alleged non-disclosure. Accordingly, the Bankruptcy Court properly

found the Plan complied with § 1129(a)(5).

### C.   The Bankruptcy Court's Good-Faith Finding
###      Under § 1129(a)(3) Was Not Clearly Erroneous

83.    To overturn a good-faith finding under § 1129(a)(3), an appellant must show

a clear error on the part of the bankruptcy court in its determination that the plan was proposed in

good faith.[1]  Here, Appellant asserts a clear error based on sundry allegations of misconduct of

Debtor during the course of the bankruptcy case.[2]  *See*, generally, App. Brief (II)(A).  With respect

to this point, Appellant misses the mark.  The subject of the good-faith inquiry under § 1129(a)(3)

is the proposed plan, itself, not prior acts of its proponents.  Here, the Plan was filed with legitimate

bankruptcy purposes and without any indication of bad faith.

84.    For a plan to be confirmed, section 1129(a)(3) requires that "[t]he plan has

been proposed in good faith and not by any means forbidden by law."  As Appellant notes, courts

in the Second Circuit construe this provision to require that "the plan was proposed with honesty and

good intentions and with a basis for expecting that a reorganization can be effected." In re Granite

Broad. Corp., 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007)(quoting Kane v. Johns-Manville Corp. (In

re Johns-Manville Corp.), 843 F.2d 636, 649 (2d Cir. 1988)).  However, the same courts remind us

---

[1]     See, generally, Appellant Brief Part II(A) (where Appellant asserts clear error in finding
proposed plan filed in good faith based on assertions of misconduct including: prior self-dealing of
management and incomplete disclosures earlier in bankruptcy case)

[2]     The Second Circuit considers good faith findings in the nature of findings of fact and reviewed
under a clearly erroneous standard.  Argo Fund Ltd. v. Bd. of Dirs. of Telecom Arg., S.A. (In re Bd. of Dirs. of
Telecom Arg., S.A.), 528 F.3d 162, 174 (2d Cir. N.Y. 2008); Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d
Cir. N.Y. 1988).  Same principle has been applied in good-faith inquiry under chapter 13 plans. Figter Ltd. v.
Teachers Ins. & Annuity Ass'n (In re Figter Ltd.), 118 F.3d 635, 638 (9th Cir. 1997) (the bankruptcy court's
determination regarding a debtor's good faith in proposing a chapter 13 plan for confirmation is a factual finding
reviewed under the clearly erroneous standard.); Ho v. Dowell (In re Ho), 274 B.R. 867, 870 (9th Cir. BAP 2002). )

of the proper focus of this inquiry is the plan itself. In re Granite Broad. Corp., 369 B.R. 120, 128

(Bankr. S.D.N.Y. 2007) (citing In re PWS Holding Corp., 228 F.3d 224, 242 (3d Cir. 2000) ("For

purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the

plan itself and whether such a plan will fairly achieve a result consistent with the objectives and

purposes of the Bankruptcy Code."(citation omitted)).   Courts in this district have interpreted good

faith under § 1129(a)(3) to mean that there exists "a reasonable likelihood that the plan will achieve

a result consistent with the objectives and purposes of the Bankruptcy Code". In re 20 Bayard

Views, LLC, 445 B.R. 83, 95-96 (Bankr. E.D.N.Y. 2011) (citations omitted).

       85.     In this case, the purposes of the Plan are evident and entirely legitimate.  The

purpose of this Plan is simply to permit Debtor to revitalize a family business, pay significant tax

liabilities over time and provide a dividend to unsecured creditors that they would not otherwise

receive.   This is an entirely legitimate purpose under the Bankruptcy Code.   The Plan was put forth

in good faith.

**D.**      **The Bankruptcy Court Did Not Clearly Err**
         **In Finding the Plan Feasible Under § 1129(a)(11)**

       86.     Clear error must be shown to overturn a bankruptcy court's determination that

a plan is feasible under § 1129(a)(11).[3]  Here, Appellant asserts that the Bankruptcy Court clearly

erred in its feasibility determination by relying on inadequate financial projections and improperly

considering prepayment of Appellant's class of creditors as relevant to feasibility.  See App. Brief

---

     [3]     Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.), 634 F.3d 79, 106 (2d Cir. N.Y. 2010) (on appeal, feasibility findings are reviewed "only for clear error"); In re Webb, 932 F.2d 155, 158 (2d Cir. N.Y. 1991)(on appeal, appellant bears "burden of proving that the court's feasibility finding was clearly erroneous."); Clear error is established only when "the reviewing court... is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948).  There can be no clear error "[i]f two views of the evidence are possible".  Anderson v. Bessemer City, 470 U.S. 564, 573-75, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

p. 30-33.  It is true that, in its feasibility determination, the court relied on financial projections prepared by the Debtor and his accountant that reflected an upswing in business due to then-recent improvements in the housing sector and reconstructions efforts related to Hurricane Sandy.

87.     The Bankruptcy Court went to great lengths to require the Debtor to place in escrow a significant sum of money before it would confirm the Debtor's Plan.  It is also true that the Bankruptcy Court required payment in full of general unsecured creditors as a precondition to confirmation, to enhance feasibility.  Neither point constitutes a clear error.   To the contrary, the Bankruptcy Court's determination of feasibility in this case is consistent with the facts, well-developed principles and practices in this Circuit.

I.     **The Bankruptcy Court properly found the Plan feasible under 11 U.S.C. § 1129(a)(11)**

88.     To confirm a plan, § 1129(a)(11) requires that the plan is feasible or, more specifically, that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Feasibility does not require certainty of success.  To establish feasibility, a plan proponent need only demonstrate that "there exists the reasonable probability that the provisions of the plan can be performed".  In re Cellular Information Sys., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) (citation omitted). Courts in this Circuit explicitly recognize that "[s]ome possibility of liquidation or further reorganization is acceptable and often unavoidable." Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.), 634 F.3d 79, 106-107 (2d Cir. N.Y. 2010).

89.     Feasibility of payment obligations need not be proven with particularity.  A

debtor must provide only "reasonable projections" that "there will be sufficient cash flow to fund the plan". In re Leslie Fay Cos., 207 B.R. 764, 789 (Bankr. S.D.N.Y. 1997). Though a plan proponent must show some specifics as to how it will meet its payment obligations under the plan, "exactly how specific those "specifics" must be depends on the circumstances." Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.), 634 F.3d 79, 107 (2d Cir. N.Y. 2010). As the Second Circuit has explained, "[i]n most situations, the time immediately following bankruptcy will call for fairly specific proof of the company's ability to meet its obligations" however "[a]s one moves further away from the time of confirmation... the proof will necessarily become less and less specific". Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.), 634 F.3d 79, 107 (2d Cir. N.Y. 2010). Courts in this district have found that "a relatively low threshold of proof will satisfy the feasibility requirement." In re 20 Bayard Views, LLC, 445 B.R. 83, 100-101 (Bankr. E.D.N.Y. 2011) (citations omitted).

90.     The Bankruptcy Court's feasibility determination in this case appears entirely consistent with the above-mentioned principles. In addition, it is consistent with the facts, because the Court made the Debtor prove it had the money required for immediate payments before it would confirm the Plan. Debtor's Plan initially proposed payment of all classes of creditors over time. To enhance feasibility, the Court required prepayment of general unsecured creditors, thereby eliminating one future payment obligation entirely. Nothing about its determination is in clear error. This bears out in case law and, in fact, reality. It is important to note that, to date, Debtors have remained current on all payments under the Plan.

## II.    The "clear errors" alleged by Appellant in the Bankruptcy Court's feasibility determination appear commonly accepted practices in the Second Circuit.

91.    Both aspects of the Bankruptcy Court's feasibility determination to which Appellant objects appear commonly accepted practices in this Circuit. The projections prepared by Debtor and its accountant reflect a considerable improvement in the business prior to and at the time of confirmation.    This improvement was due, in part, to general improvements in the housing markets but also reconstruction efforts following Hurricane Sandy. The data satisfied the Court that Debtor would be able to meet its near-term payment obligations under the Plan.  To address feasibility concerns regarding future payments, the Court required the Plan to prepay in full the class of general unsecured creditors.  The Court's reliance on Debtor's projections and enhancement of feasibility by requiring prepayment of a class of creditors is entirely consistent with the feasibility analyses applied in this Circuit.

92.    Feasibility determinations are commonly based on financial projections provided by the debtor that take into account changing market conditions.  Courts in this Circuit have often relied on basic financial projections and testimony in finding of feasiblity. See, e.g. In re Fur Creations by Varriale, 188 B.R. 754, 759 (Bankr. S.D.N.Y. 1995) (finding plan feasible based only on testimony at confirmation hearing and the debtor's financial projections). The Second Circuit has explicitly approved feasibility findings based on improvement in market conditions at the time of confirmation. See Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.), 634 F.3d 79, 107 (2d Cir. N.Y. 2010) (finding the bankruptcy court's feasibility analysis "thorough and persuasive", and no clear error, where relied on projections based on real improvement in market conditions at the time of confirmation decision, noting "Although no one can predict market

conditions two or four years down the road, the improvement the bankruptcy court noted [at the time

of its confirmation decision] was real"); In re Drexel Burnham Lambert Group, 138 B.R. 723, 762

(Bankr. S.D.N.Y. 1992) (finding economic conditions probative of feasibility).

93.     Further, logically, and contrary to Appellant's assertions, plan modifications

that increase the probability of payment to one class of creditors are consistently held to enhance a

plan's feasibility in general.  See In re Webb, 932 F.2d 155, 158 (2d Cir. N.Y. 1991) (finding

modifications "making it more probable that the unsecured creditors would be paid" make "the

original plan more feasible").

94.     At the subsequent hearing, the Debtor put forward a Plan which the Court

determined could be feasible - though not memorialized in the Plan prior to the hearing.  Based on

that finding, the Court permitted Debtor to put forward a new Plan.

**E.     The Bankruptcy Court Did Not Abuse Its Discretion
In Failing To Dismiss The Case Following Its February 5, 2013 Order**

95.     This Circuit requires a clear abuse of discretion to overturn a bankruptcy

court's application of its own order.[4]  Appellant asserts a clear abuse of discretion and violation of

the law-of-the-case doctrine by the bankruptcy court related to an alleged failure to follow its own

order of February 5, 2013.  Neither assertion is availing.  The law-of-the-case doctrine does not apply

---

[4]     Deep v. Copyright Creditors, 122 Fed. Appx. 530, 531-532 (2d Cir. N.Y. 2004) (the
bankruptcy court's interpretation of its order will not be disturbed absent a clear abuse of discretion.)
(citing Truskoski v. ESPN, Inc., 60 F.3d 74, 77 (2d Cir. 1995) (citation and internal quotations omitted);
Lutin v. Advanced Mining Sys. (In re Advanced Mining Sys.), 189 B.R. 36, 40 (S.D.N.Y. 1995) (an
appellate court will not reverse a lower court's interpretation of its own order unless the record clearly
shows an abuse of discretion. The lower court's interpretation of its own order is entitled to great weight
on appeal, and will be accepted, absent a compelling basis to hold otherwise. These principles reflect the
reality that the lower court is in the best position to interpret its own orders) (citing In re Buckhead
America Corp., 180 Bankr. 83, 1995 U.S. Dist. LEXIS 5074 (D. Del. 1995)

to interlocutory orders such as the one in question. Further, if there was any contradiction of that order at all, the court was well within its discretion.

96.    The law-of-the-case doctrine does not apply to interlocutory order such as this one. It is well established that the doctrine applies only to final rulings and not interlocutory orders. See, e.g., Murphy v. FedEx Nat'l LTL, Inc., 618 F.3d 893, 905 (8th Cir. 2010) ("The law-of-the-case doctrine only applies to final orders, not interlocutory orders.").

97.    The order in question is clearly an interlocutory order and, by its very terms, not final. The order in question was issued in the middle stages of the bankruptcy case and clearly interlocutory. Further, the order states, in relevant part, that if Debtor "fails to demonstrate at the further confirmation hearing that its proposed plan of reorganization satisfies the criteria for confirmation, particularly feasibility" then "this Court *will* enter an order dismissing or converting [Debtor's] case" (emphasis added). The word will, instead of shall in the order expressly reserves final ruling for the future.

98.    Notwithstanding that the law-of-the-case doctrine does not apply, the Court's actions were well within its discretion. On February 5th, the Court ordered the Debtor to demonstrate the feasibility of its plan at the next hearing. At the next hearing, testimony of the Debtor demonstrated to the Court that a feasible plan was possible.

99.    At the subsequent hearing, the Debtor put forward a plan which the Court determined could be feasible – though not memorialized in the Plan prior to the hearing. Based on that finding, the court permitted Debtor to put forward another Plan which met the criteria set forth in § 1129 of the Bankruptcy Code, as that criteria is understood by the Court.

100.    In sum, the Court simply modified its order to conform to the facts presented

to it.  That is not abuse of discretion.

**F.     The Appeal Is Equitably Moot As The
        Plan Has Been Substantially Consummated**

101.    A threshold matter in determining confirmation appeals is whether the appeal

is barred under the equitable mootness doctrine.  See Windels Marx Lane & Mittendorf, LLP v.

Source Enters. (In re Source Enters.), 392 B.R. 541, 547-548 (S.D.N.Y. 2008) ("Before considering

the merits, the Court must address a threshold matter:  [548]  whether this appeal is barred under the

"equitable mootness" doctrine") (citing Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)

(Chateaugay II), 10 F.3d 944 (2d Cir. 1993)).  The Second Circuit has applied the doctrine to hold

that "'[a]n appeal should . . . be dismissed as moot when, even though effective relief could

conceivably be fashioned, implementation of that relief would be inequitable.'" Deutsche Bank AG

v. Metromedia Fiber Network (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 143 (2d Cir.

2005) (quoting Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official

Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.) (Chateaugay I), 988 F.2d

322, 325 (2d Cir. 1993)).  A presumption of equitable mootness arises when a chapter 11 plan has

been "substantially consummated".  Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation

Corp.), 383 B.R. 856, 863 (E.D.N.Y. 2008)).    Here, the Plan has been so substantially

consummated.

102.    Substantial consummation, as defined by the Code, means the "transfer of all

or substantially all of the property proposed by the plan to be transferred, . . . assumption by the

debtor or by the successor to the debtor under the plan of the business or of the management of all

I:\Client_files\Fiorano Tile\Appeal\appeal brief 10-15-13.wpd

or substantially all of the property dealt with by the plan; and . . . commencement of distribution under the plan." 11 U.S.C. § 1101(2).

103.   Here, the Plan has been substantially consummated and the only remaining issues are the resolution of this appeal and the issuance of a final decree.  As a result, there has been a comprehensive change in circumstances of Debtor.  Debtor has transferred the property proposed to be transferred according to the terms of the Plan; assumed the business; and commenced distributions under the Plan including payment of the unsecured creditors in full.  The Debtor and its principals have comprehensively changed circumstances by investing their capital in reliance on the confirmed Plan.   Further, Appellant has not and can not establish the necessary factors to rebut presumption of equitable mootness created by substantial consummation. [5]

104.   Appellants real purpose is to convert the Debtor's case or to dismiss it.  In either instance, such a result is contrary to factors a, b and c.

105.   Consequently, the relief requested by the Appellant should be denied.

**This space intentionally left blank.**

---

[5]      This Circuit finds that the presumption of equitable mootness established by substantial consummation can only be rebutted by showing of five factors:  (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from. , Windels Marx Lane & Mittendorf, LLP v. Source Enters. (In re Source Enters.), 392 B.R. 541, 548 (S.D.N.Y. 2008) (citations omitted).

## **CONCLUSION**

By reason of the foregoing, Appellee, Reorganized Debtor, respectfully requests that this Court deny Appellant's appeal in its entirety, and grant such other and further relief as this Court deems just and proper.

Dated: Westbury, New York
   October 17, 2013

          _/s/ John H. Hall, Jr._
            John H. Hall, Jr.
            Scott L. Swanson
         Pryor & Mandelup, L.L.P.
         675 Old Country Road
         Westbury, New York 11590
         (516) 997-0999

I:\Client_files\Fiorano Tile\Appeal\appeal brief 10-15-13.wpd