**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------X
In re:

FIORANO TILE IMPORTS, INC.,

                    **MEMORANDUM OF**
                    **DECISION AND ORDER**
                    13-CV-4637-ADS

Debtor.

-------------------------------------------------X

**APPEARANCES:**

**Richard V. Kanter, Esq.**
*Attorney for the Appellant Cherry Valley Associates, LLC*
555 Broadhollow Road, Suite 274
Melville, NY 11747

**Pryor and Mandelup, L.L.P.**
*Attorneys for the Appellee Fiorano Tile Imports, Inc.*
675 Old Country Road
Westbury, NY 11590
    By:  John H. Hall, Jr., Esq.,
          Scott L. Swanson, Esq., Of Counsel

**SPATT, District Judge.**

This case comes before the Court on an appeal filed by the Appellant Cherry Valley

Associates, LLC (the "Appellant") from a June 20, 2013 Order of United States Bankruptcy

Judge Alan S. Trust, which confirmed the Seventh Amended Chapter Eleven Plan of

Reorganization (the "Seventh Amended Plan") entered by the Debtor Fiorano Tile Imports, Inc.

(the "Debtor") pursuant to Rule 7052(a) of the Federal Rules of Bankruptcy Procedure (the

"Confirmation Order"). The Appellant challenges the Confirmation Order on the grounds that

the Bankruptcy Court erred and abused its discretion in finding that the Seventh Amended Plan

was (1) feasible under § 1129(a)(1)) of Title 11 of the United States Code (the "Bankruptcy

Code"); (2) proposed in good faith under 11 U.S.C. § 1129(a)(3); and (3) complied with 11

1

U.S.C. § 1129(a)(5). Moreover, the Appellant contends that the Bankruptcy Court erred and abused its discretion by failing to enforce its previous Order, dated February 5, 2013, which dismissed or, in the alternative, converted the Debtor's case to one under Chapter 7 of the Bankruptcy Code. Accordingly, the Appellant seeks reversal of the Bankruptcy Court's Confirmation Order and dismissal of the Debtor's case.

In opposition, the Debtor argues that the Seventh Amended Plan has been substantially consummated, thus creating a rebuttable presumption of equitable mootness, to which it contends Appellant has no defense. The Debtor also asserts that the Appellant lacks standing to bring this appeal. In this regard, according to the Debtor, the Appellant is not an aggrieved person, since it has not alleged that it would receive more in a conversion or dismissal of the case than it would under the confirmed Seventh Amended Plan.

For the reasons that follow, the Court denies the Appellant's appeal and affirms the Confirmation Order on the ground that this appeal is equitably moot.

## I. BACKGROUND

The Debtor is a tile supplier for the construction business, which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 21, 2010. Its principal shareholders are Jerry Tudisco, John Tudisco and Joseph Tudisco (collectively, the "Debtor's Principal Shareholders"). On that same date, September 21, 2010, the Debtor's Affiliate, Fiorano Tile Showcase at Bellmore LLC (the "Debtor-Affiliate"), also filed a voluntary petition for relief pursuant to Chapter 11. The Debtor-Affiliate is owned by Santa Tudiscio, who is the mother of the Debtor's Principal Shareholders.

The Appellant was the Debtor's former landlord and is an unsecured creditor that holds a pre-petition claim for unpaid rent in the sum of $55,460. The Appellant also has a claim for

lease rejection damages under 11 U.S.C. § 502(b)(6)(A)(i), in the sum of $96,124.27. As such, the Appellant claims the Debtor owes it a total of $151,584.27.

On January 31, 2012, the Debtor and the Debtor-Affiliate filed a joint disclosure statement for approval with a proposed Chapter Eleven reorganization plan that called for one percent repayment to unsecured creditors (the "First Plan"). The Appellant objected to this plan based on (1) a lack of adequate information in the joint disclosure statement and (2) the inability of the First Plan to comply with the confirmation requirements under the Bankruptcy Code.

In particular, the Appellant inquired into who owned and operated an entity known as Fiorano Realty Company ("Fiorano Realty"), which was the Debtor's new landlord. Fiorano Realty owns real property from which the Debtor operated its business and is a creditor of the Debtor, holding one of the twenty largest unsecured claims. Although the Debtor claimed that it was not making rental payments to Fiorano Realty, operating reports indicated that it was in fact making payments to Fiorano Realty. At the time, it appeared that these payments amounted to at least $17,350 from October of 2011 to January of 2012.

The Appellant also challenged the feasibility of the Debtor being able to meet the eight-year financial projections that it submitted in support of the First Plan, suggesting that said projections were speculative in light of the fact that the Debtor had been experiencing several months of below-expected earnings. In addition, the Appellant pointed out the Debtor's administrative insolvency, in that total administrative claims were estimated by the Debtor as being $175,000, but yet the Debtor had only $11,000 escrowed for administrative expenses.

In response to the Appellant's objections, the Debtor filed an amended Chapter Eleven reorganization plan (the "First Amended Plan"), a second amended Chapter Eleven reorganization plan (the "Second Amended Plan") and a third amended Chapter Eleven

reorganization plan (the "Third Amended Plan"). In amending its Chapter Eleven reorganization

plan, the Debtor included amended joint disclosure statements, which divulged that Santa

Tudisco actually owned Fiorano Realty, but made no disclosure concerning the affiliations of the

Debtor's officers to Fiorano Realty or any other non-debtor entity. It was further revealed that

the purported rent payments made by the Debtor to Fiorano Realty were not actually rent

payments and that they apparently amounted to a total of $34,650, as opposed to $17,350.

Specifically, Jerry Tudisco, who was also one of the principal officers of the Debtor, stated that

the Debtor would not pay rent to Fiorano Realty under their lease agreement. Accordingly,

because the Debtor had failed to pay rent for years, Fiorano Realty's mortgagee had initiated a

foreclosure action.

Despite the Debtor's submission of three amended joint disclosure statements and plans,

the Appellant maintained many of its objections to the Debtor's Chapter Eleven reorganization

plan. In this regard, the Appellant contended that issues regarding the pre-existing non-

disclosures and the reorganization plan's feasibility were still not adequately addressed by any of

the Debtor's modifications. The Appellant further emphasized the Debtor's wrongful diversion

of funds to Fiorano Realty for usages unrelated to the bankruptcy proceedings.

Subsequently, the Debtor filed a fourth amended Chapter Eleven reorganization plan (the

"Fourth Amended Plan") followed by a fifth amended Chapter Eleven reorganization plan (the

"Fifth Amended Plan"), both of which were accompanied by amended joint disclosure

statements. The Fourth Amended Plan and the Fifth Amended Plan raised the proposed

distribution from one cent on the dollar to one-and-a-half cents on the dollar for the claims of

general unsecured creditors, including the Appellant, for a period of eight years. On July 27,

2012, the Bankruptcy Court approved the Debtor's fifth amended joint disclosure statement and

set a confirmation hearing for the Fifth Amended Plan, which was eventually adjourned to October 9, 2012.

On October 6, 2012, the Appellant filed a written objection based on its discovery that the Debtor had allegedly wrongfully transferred even more than $34,650 to Fiorano Realty. Consequently, the October 9, 2012 confirmation hearing was again adjourned to December 17, 2012.

Thereafter, on October 23, 2012, the Debtor submitted a modified fifth amended Chapter Eleven reorganization plan (the "Modified Fifth Amended Plan"), and on October 24, 2012, the Appellant moved to dismiss the case or, in the alternative, for the case be converted to one for Chapter Seven bankruptcy. The Appellant argued that the Debtor's wrongful diversion of funds demonstrated gross mismanagement and constituted a breach of the fiduciary duty owed by the Debtor to the creditors of its estate.

On February 5, 2013, following the confirmation hearing held on December 17, 2012, the Bankruptcy Court denied the Debtor's Modified Fifth Amended Plan, because the Plan failed to satisfy the confirmation criteria of 11 U.S.C. § 1129. The Bankruptcy Court permitted the Debtor to submit another amended Chapter Eleven reorganization plan, but advised the Debtor that should it fail to satisfy the § 1129 requirements, its case would be either dismissed or converted to one for Chapter Seven Bankruptcy.

In accordance with the Bankruptcy Court's instructions, on May 10, 2013, the Debtor submitted a sixth amended Chapter Eleven reorganization plan (the "Sixth Amended Plan"). At a confirmation hearing held on May 20, 2013, the Bankruptcy Court declined to confirm the Sixth Amended Plan for its failure to satisfy § 1129 confirmation criteria, as the Debtor's current earnings were unable to sustain the estimated monthly payments to the creditors proposed by the

5

plan. However, despite the February 5, 2013 Order and the Appellant's continued objections to the Debtor's Plan based on the Debtor's wrongful fund diversion and nondisclosure of affiliates, the Bankruptcy Court did not dismiss or convert the Debtor's case.

Rather, the Bankruptcy Court adjourned the confirmation hearing in order to allow the Debtor additional time to work out more favorable arrangements with the United States Internal Revenue Service ("IRS") and New York State for repaying their tax claims against the Debtor. The Bankruptcy Court indicated that if the Debtor returned with an amended Chapter Eleven reorganization plan which provided for paying all unsecured creditors' claims on the plan's proposed effective date and the subordination of management salaries to creditor payments, the Bankruptcy Court would confirm the plan.

On June 6, 2013, the Debtor submitted the Seventh Amended Plan. As part of this plan, the Debtor (1) memorialized its agreements with the IRS and New York State taxing authorities; (2) agreed to the subordination of management salaries until any default under the Plan was cured; and (3) created an escrow fund to pay off all outstanding unsecured creditor claims on the plan's effective date. On June 12, 2013, the Appellant filed a limited objection to the Seventh Amended Plan on grounds of feasibility.

On June 20, 2013, the Bankruptcy Court issued the Confirmation Order, in which the Bankruptcy Court overruled the Appellant's objection and proceeded to confirm the Seventh Amended Plan. In this regard, the Bankruptcy Court held that the Seventh Amended Plan was conducted in good faith and in compliance with the requirements of 11 U.S.C. § 1129(a) and all other applicable rules and regulations. In addition, the Bankruptcy Court concluded that (1) the Seventh Amended Plan was unlikely to be followed by further financial reorganizations and (2) the proposed payment of the unsecured creditor claims within ten days of the effective date of

the plan eliminated the risk of default, and as a consequence, addressed the Appellant's

feasibility concerns.

On July 8, 2013, the Appellant moved to stay the Confirmation Order pending its appeal,

but this motion was denied by the Bankruptcy Court. Thereafter, on July 11, 2013, the Debtor

filed a Statement of Distribution, which advised that the Debtor had (1) issued checks totaling

$27,333 to the unsecured creditors, all of which cleared except the one issued to Appellant, who

did not cash the check; (2) paid New York State $18,950; and (3) begun making monthly

payments to the IRS in the amount of $4,382.

## II. DISCUSSION

### A. Standard of Review

A district court hearing an appeal from a bankruptcy court reviews that court's findings

of fact under the "clearly erroneous" standard, see Fed. R. Bankr. 8013, while its conclusions of

law are reviewed under the de novo standard, Seung v. Silverman, 288 B.R. 174, 176 (E.D.N.Y.

2003) (citing In re Aro Chem Corp., 176 F.3d 610, 620 (2d Cir. 1999)). Further, mixed

questions of fact and law are reviewed de novo. In re Vebeliunas, 332 F.3d 85, 90 (2d. Cir 2003)

(citing FDIC v. Providence Coll., 115 F.3d 136, 140 (2d. Cir 1997)).

A bankruptcy court's interpretation of its own order will not be disturbed "absent a clear

abuse of discretion" and accordingly, is reviewed under an abuse of discretion standard. Deep v.

Copyright Creditors, 122 F. App'x 530, 531–32 (2d. Cir. 2004) (quoting Truskoski v. ESPN,

Inc., 60 F.3d 933, 941 (4th Cir. 1997)). Abuse of discretion exists when a court's decision rests

on an error of law or a clearly erroneous factual finding or, even if not erroneous in law or fact, is

not within a "range of permissible decisions." In re Int'l Total Services, Inc., No. 06-CV-5380-

ADS, 2007 WL 2687658, at *1, 3 (E.D.N.Y. Sept. 10, 2007) (quoting Vincenty v. Bloomberg, 476 F.3d 74, 83 (2d. Cir. 2007)).

## B. As to the Appellant's Standing

Before proceeding to the merits of this appeal, the Court first must dispose of the Debtor's challenge to the Appellant's standing. In this regard, the Debtor contends that the Appellant does not meet the classification of an "aggrieved person" because it has not alleged that it would recover more in the event of a Chapter Seven conversion and liquidation than it would under the confirmed Seventh Amended Plan. The Debtor also claims that the Appellant lacks prudential standing.

Of importance, the current Bankruptcy Code "prescribes no limits" on appellate standing beyond those within Article III of the United States Constitution. In re DBSD North America, Inc. 634 F.3d 79, 88 (2d. Cir. 2011). However, the Second Circuit has adopted a longstanding rule consistent with the former Bankruptcy Act that, in order to have standing, "an appellant must be an aggrieved person—a person directly and adversely affected pecuniarily by the challenged order. Id. (quoting Int'l Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744, 747 (2d. Cir. 1991)) (internal quotation marks omitted). The purpose of this rule is to prevent courts from becoming overwhelmed by the influx of appeals from parties indirectly affected by bankruptcy court orders that would necessarily result from the absence of such a limitation. Kane v. Johns-Manville Corp., 843 F.2d 636, 642 (2d Cir. 1988).

"In addition to satisfying the aggrieved person standard, an appellant must also have prudential standing. This requires that the appellant assert his own legal rights and interests and not those of third parties." Freeman v. Journal Register Co., 452 B.R. 367, 371 (S.D.N.Y. 2010); see also Wight v. BankAmerica Corp. 218 F.3d 79, 89 (2d. Cir. 2000) (recognizing that Article

III of the Constitution requires that he party invoking the power of the court must have a personal stake in the outcome of the case). Thus, prudential standing requires that an objecting party only challenge a reorganizaiton plan that directly implicates its own rights and interests. In re Agape World, Inc. 467 B.R.556, 573 (E.D.N.Y. 2012) (citing Warth v. Seldin 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

In this case, the Court finds that the Debtor's argument that the Appellant is not an aggrieved person is misplaced. This is because even if the Appellant would recover more under the Seventh Amended Plan than it would should the case be converted to one under Chapter Seven and result in liquidation, there is nevertheless the possibility that the Appellant may recover more under an alternative reorganization plan. See Kane, 843 F.2d at 642 ("[The appellant creditor] might receive more under this [reorganiztion] [p]lan than he would receive in a liquidation. However, he might do better still under alternative plans. Since the [reorganization] [p]lan gives [the appellant creditor] less than what he might have received, he is directly and adversely affected pecuniarily by it, and he therefore has standing to challenge it on appeal.").

Indeed, the Appellant holds an undisputed claim of $151,584.27 against the Debtor. Under the confirmed Seventh Amended Plan, this claim has been reduced by more than 98.5%. The substantial diminution of the Appellant's recovery of its claim represents a direct financial harm to the Appellant, thus fulfilling the standard for qualifying an aggrieved person.

Moreover, in the Court's view, the fact that secured and unsecured creditors alike have approved the Seventh Amended Plan despite agreeing to compromised recoveries has no bearing on the Appellant's standing to bring this appeal, despite the Debtor's contention to the contrary. In this regard, to the extent the Debtor relies on the decision in Freeman, 452 B.R. at 371, to support its argument, the Court finds the case to be distinguishable. In Freeman, the appellant

9

was an equity holder rather than an unsecured creditor, as the Appellant is here. Id. As an equity holder, the Freeman appellant had no basis for recovery, because the undisputed insolvency of the debtor in that case prevented shareholders from obtaining recovery under any possible plan of reorganization, as any additional available funds were required to be first distributed to creditors as a matter of lawful claimancy. Id. Accordingly, the Freeman appellant could not claim that there was any pecuniary interest at stake. Id.

Conversely, here the Appellant has an easily identifiable pecuniary interest in the instant proceedings. The Appellant is a creditor that will indisputably receive repayment under the Debtor's reorganization and will receive only a very small percentage of its total claim under the Seventh Amended Plan. That like classes of creditors have approved of the Seventh Amended Plan does nothing to weaken the Appellant's right to oppose it in protection of a substantial financial stake. Further, it is irrelevant that the Appellant stands below secured creditors in the hierarchy of repayment priority, because the Second Circuit demands no more to accord a creditor standing to appeal than that it have a "valid and impaired claim." In re DSBD 634 F.3d at 90.

Regarding the Debtor's challenge to the Appellant's prudential standing, the Court also finds this argument without merit. The Appellant objects to the plan solely on the basis of protecting its aforementioned substantial pecuniary interest in the outcome of this case. In the Court's view, while other creditors have agreed to compromised recoveries, this bears no weight on the Appellant's prudential standing because the Appellant does not seek to assert the rights of those parties.

Accordingly, the Court finds that the Appellant does have standing to bring this appeal.

## C. As to Whether the Appeal is Equitably Moot

In addition to standing, whether this appeal is equitably moot is another threshold issue which the Court must resolve before considering the merits of this case. In this regard, equitable mootness is "a prudential doctrine under which the district court may dismiss a bankruptcy appeal 'when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" In re Charter Commc'ns, Inc., 691 F.3d 476, 481 (2d Cir. 2012) cert. denied, 133 S. Ct. 2021, 185 L. Ed. 2d 905 (2013)) (quoting Official Comm.Of Unsecured Creditors of LTV Aerospace and Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.)(Chateaugay I), 988 F.2d 322, 325 (2d Cir. 1993)). In other words, equitable mootness is unique in being a product of the district court's unwillingness, rather than its inability, to grant relief. In re Metromedia Fiber Network, Inc. 416 F.3d 136, 144 (2d Cir. 2005) (citingIn re UNR Indus., 20 F.3d 766, 769 (7th Cir. 1994)).

The doctrine of equitable mootness is "especially pertinent in bankruptcy proceedings, where the ability to achieve finality is essential to the fashioning of effective remedies." Chateaugay I, 988 F. 2d at 325. Indeed, due to the public interest in promoting successful debtor reorganizations, acts of reliance on unstayed bankruptcy court confirmation orders should not be "routinely vulnerable to nullification." Id. at 326. Thus, equitable mootness requires the district court to weigh the "importance of finality" against an appellant's right to review and relief. In re Charter Communications, Inc., 691 F.3d at 481.

In this case, the Debtor asserts that the confirmed Seventh Amended Plan has been substantially consummated, creating a presumption of equitable mootness to which the Appellant offers no rebuttal. See id. at 482 ("[A]n appeal is presumed equitably moot where the debtor's plan of reorganization has been substantially consummated.") Of relevance, the Bankruptcy

11

Code defines "substantial consummation" as "(A) transfer of all or substantially all of the

property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor

to the debtor under the plan of the business or of the management of all or substantially all of the

property dealt with by the plan; and (C) commencement of distribution under the plan." 11

U.S.C. § 1101(2).

Plan consummation is of principal importance to the equitable mootness inquiry because

it clarifies supplemental considerations, including "the twin goals of providing finality for

creditors and a 'fresh start' for debtors." In re Pawlowski 428 B.R. 545, 551 (E.D.N.Y. 2009).

A finding of substantial consummation creates a presumption that granting further relief would

be either inequitable or impractical. Id. (citing In re Enron Corp., 326 B.R. 497, 502 (S.D.N.Y.

2005)).

However, substantial consummation does not automatically make it impossible or

inequitable for a court to grant an appellant effective relief. In re Charter Communications, Inc.

691 F.3d at 482. Rather, the presumption of equitable mootness may be successfully rebutted if

all five of the following factors are met:

> (a) the court can still order some effective relief; (b) such relief
> will not affect the re-emergence of the debtor as a revitalized
> corporate entity; (c) such relief will not unravel intricate
> transactions so as to knock the props out from under the
> authorization for every transaction that has taken place and create
> an unmanageable, uncontrollable situation for the Bankruptcy
> Court; (d) the parties who would be adversely affected by the
> modification have notice of the appeal and an opportunity to
> participate in the proceedings; and (e) the appellant pursued with
> diligence all available remedies to obtain a stay of execution of the
> objectionable order if the failure to do so creates a situation
> rendering it inequitable to reverse the orders appealed from.

Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)(Chateaugay II), 10 F.3d 944, 952–53

(2d Cir. 1993) (citations, and internal quotation marks and alterations omitted). These factors are

commonly referred to by courts as the "Chateaugay factors."  See, e.g., In re Charter

Communications, Inc., 691 F.3d at 482.

"Only if all five Chateaugay factors are met, and if the appellant prevails on the merits of

its legal claim, will relief be granted."  Id.  A critical consideration in the equitable mootness

inquiry is whether the appellant sought a stay of the appealed order; if a stay was sought, the

court will "provide relief if it is at all feasible"—that is, unless relief will undermine the aims of

the third Chateaugay factor.  In re Metromedia Fiber Network, 416 F.3d at 144 (quoting

Chateaugay II, 10 F.3d at 953); In re PC Liquidation Corp., 383 B.R. 856, 865 (S.D.N.Y. 2008)).

In the instant case, given the significant transactions that have occurred in reliance on the

Bankruptcy Court's Confirmation Order, including the Debtor's payment of priority and

administrative claims to governmental agencies and the distribution of almost all payments due

to unsecured creditors, the Court determines that the Seventh Amended Plan has been

substantially consummated.  See In re Metromedia Fiber Network, 416 F.3d at 144; Freeman,

452 B.R. at 373; In re PC Liquidation. 383 B.R. at 863–64.

In this regard, in accordance with the terms of Confirmation Order, the initial distribution

payments to unsecured creditors effectuated the Seventh Amended Plan.  As the Bankruptcy

Court noted in its decision to decline Appellant's request for a stay of the Confirmation Order,

the Appellant's failure to cash its repayment check does not prevent the Seventh Amended Plan's

substantial consummation.  Moreover, the Debtor's principal officers have assumed management

of the Debtor and have agreed to subrogate their salaries until all default under the Seventh

Amended Plan is cured.

Since the Court finds that the Seventh Amended Plan has been substantially

consummated, the Court must proceed to consider the Chateaugay factors to determine whether

the presumption of equitable mootness has been rebutted.  As an initial matter, the Court notes

that the Appellant sought a stay of the Confirmation Order.  While "a stay not sought, and a stay

denied, lead equally to the implementation" of a reorganization plan, In re Delta Air Lines, Inc.,

374 B.R. 516, 524 (S.D.N.Y. 2007) (citing In re UNR Indus., 20 F.3d at 769–70),  aff'd sub nom.

Ad Hoc Comm. of Kenton Cnty. Bondholders v. Delta Air Lines, Inc., 309 F. App'x 455 (2d.

Cir. 2009), the fact that the Appellant did seek a stay requires the Court to look more closely at

the feasibility of relief in the face of the presumption of equitable mootness, In re Media Fiber

Network,416 F.3d at 144 (citing Chateaugay II, 10 F.3d at 953).  Specifically, the Court must

look to the other Chateaugay factors in determining whether relief would so disturb the ongoing

implementation of the Seventh Amended Plan so as to justify a holding of equitable mootness.

Regarding the first factor, the Appellant contends that the Court can order effective relief

by ordering reversal of the Confirmation Order to be followed with either dismissal or

conversion of the case to one under Chapter Seven.  The Court agrees.  Therefore, the Court's

primary inquiry shall concern an analysis of the second, third and fourth factors—that is,

(1) whether granting such relief will adversely affect the reemergence of the Debtor as a

revitalized entity; (2) whether it will reverse the transactions that have already been made under

the Seventh Amended Plan; and (3) whether it would affect the interests of parties who have not

had the opportunity to participate in these proceedings.

The Court does not accept the Appellant's contention that dismissal or conversion of the

case would be in the best interest of the creditors, as it has not been proven that the creditors

would receive more in such proceedings than they would under the confirmed plan.  As

significant assets are owed to the highest priority taxing authorities, if those entities exercised

their respective statutory remedies in liquidation proceedings, there would be no funds left for

14

payment of the general unsecured creditors who have, with the exception of the appellant and one other party, uniformly and overwhelming approved of the Seventh Amended Plan.

In addition, cessation of payments to taxing authorities and unsecured creditors would open the doorway for those entities to bring claims against the Debtor's principals, since those actions are currently stayed under the confirmed Seventh Amended Plan. Reversal of confirmation would eliminate current requirements for the subrogation of internal salaries to repayment of outstanding claims, thus jeopardizing recovery for creditors now seeking repayment directly against the Debtor's principals. In light of these considerations, the Court finds that the Appellant's appeal would not only disturb the restorative effect of transactions taken in reliance on the Confirmation Order, but would substantially implicate the interests of parties who are not before this Court. See In re Pawlowski, 428 B.R. at 551.

Accordingly, the Appellant's appeal is equitably moot. As a consequence, the Court need not consider the merits of the Appellant's appeal. See In re Arcapita Bank B.S.C.(c), BR 12-11076, 2014 WL 46552, at *1 (S.D.N.Y. Jan. 6, 2014) ("I conclude that both appeals must be dismissed on equitable mootness grounds. Accordingly, I will not address the merits of these appeals."); In re FairPoint Commc'ns, Inc., 452 B.R. 21, 30 (S.D.N.Y. 2011) ("Equitable mootness bars the court from considering this aspect of the appeal on the merits."); In re Adelphia Commc'ns Corp., 367 B.R. 84, 89 (S.D.N.Y. 2007) (same).

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that this appeal is denied and the June 20, 2013 Confirmation Order of the Bankruptcy Court is affirmed on the ground that the appeal is equitably moot; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
September 12, 2014

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge